**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASHLEY GAGER** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:11-cv-2115** |
| | : | **(JUDGE MARIANI)** |
| **DELL FINANCIAL SERVICES, LLC** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Dell Financial Services, LLC's ("Defendant") Motion to Dismiss Plaintiff Ashley Gager's ("Plaintiff") Amended Complaint (Doc. 7), removed to this Court on November 11, 2011 (Doc. 1) from the Court of Common Pleas, Wayne County, Pennsylvania. Plaintiff alleges multiple violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and seeks treble damages under the statute.

## BACKGROUND

In or around December 2007, Plaintiff secured a line of credit with Defendant to purchase computer equipment (Pl.'s Am. Compl. at ¶ 10, ECF Dkt. 7.) Plaintiff's Amended Complaint alleges that Plaintiff (1) has a mobile telephone number that she has possessed for several years, (2) she has used this number exclusively, and (3) she "does not believe that it was ever ported from a wireline service." (Pl.'s Am. Compl. at ¶ 8.) Furthermore,

Plaintiff avers that she is charged for incoming calls to her mobile telephone. (Pl.'s Am. Compl. at ¶ 9.)

At the time that Plaintiff completed her credit application with Defendant, she filled-out an internet form that asked applicants to provide a "house phone" number. (Pl.'s Am. Compl. at ¶ 11.) Plaintiff did not have a hard-wired telephone line, and thus provided her mobile telephone number in its place. (Pl.'s Am. Compl. at ¶ 11.) Plaintiff became delinquent in her payments to Defendant, and Defendant began calling Plaintiff's mobile phone with prerecorded messages regarding the debt. Sometime during December 2010, Plaintiff sent Defendant a letter asking Defendant to cease calling her. (Pl.'s Am. Compl. at ¶ 12.) A copy of that letter, attached to Plaintiff's Amended Complaint, fails to inform Defendant that the number at which they are contacting Plaintiff was connected to a mobile device. (*See* Pl.'s Am. Compl., Exh. A, ECF Dkt. 7-1.) Defendant received this letter on December 27, 2010. (Pl.'s Am. Compl. at ¶ 13.) Plaintiff asserts that this "letter revoked her consent that she had previously given to the Defendant to place calls to her cellular telephone number." (Pl.'s Am. Compl. at ¶ 14.) Plaintiff maintains, however, that Defendant continued to place an additional "forty calls to her cellular phone in less than three weeks." (Pl.'s Am. Compl. at ¶ 14.)

**STANDARD**

This matter is presented to the district court as a motion to dismiss. In light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Middle District of Pennsylvania has adopted the following standard by which to treat motions to dismiss. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). In *Iqbal*, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Furthermore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted); *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009).

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts, as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. Thus, a complaint must "show" an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Philips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.*; *see also McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## DISCUSSION

Defendant's Motion to Dismiss (Doc. 9) is predicated upon several questions of law, which, in light of the allegations of Plaintiff's Amended Complaint, which must be accepted as true for purposes of determining the legal sufficiency thereof, renders the matter ripe for disposition. Accordingly, the Court's analysis proceeds as a matter of statutory interpretation.

"The TCPA regulates the use of telephones to contact consumers." *Adamcik v. Credit Control Services, Inc.*, No. 10-399, 2011 WL 6793976, at *3 (W.D. Tex. Dec. 19, 2011). Under the pertinent provisions of the TCPA, it is unlawful:

> To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or artificial prerecorded voice...(iii) to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The express language of the statute instructs that calls to a cellular phone are permissible in the case of an emergency or if the call is "made with the prior express consent of the called party. . . ." *Id. See Adamcik*, 2011 WL 6793976, at *3. Furthermore, an "automatic telephone dialing system" (hereinafter "autodialer") is any equipment which has the ability: "(A) to store or produce telephone numbers to be called, using a random or

sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). In the present matter, the prerecorded telephone calls made to Plaintiff's mobile device were made from an autodialer. Plaintiff admits in her Amended Complaint that she provided consent for Defendant to call her mobile phone when she listed that number on a credit application (*see* Pl.'s Am. Compl. at ¶ 14); thus, the question of consent to contact is undisputed, leaving Plaintiff's claim to turn on whether, as a matter of law, she was able to revoke such consent with her December 2010 letter to Defendant.

The Federal Communications Commission's Declaratory Ruling *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 564-65 (2008) (hereinafter, "2008 Declaratory Judgment"), sets forth certain exceptions to the broad mandate of the TCPA, and provides official guidance on its implementation. *See* 47 U.S.C. § 227(b)(2)(providing authorization to the FCC to enact limited exemptions to the TCPA). The FCC held, in pertinent part:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

2008 *Declaratory Judgment*, at *564.

The 2008 Declaratory Judgment acknowledges an earlier 1992 Order in which the FCC determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992) (emphasis added) ("1992 TCPA Order"). It is this "absent instructions to the contrary" language upon which Plaintiff forges her argument that unilateral withdrawal of consent to be contacted, following the consummation of her credit agreement with Defendant, is authorized under the TCPA. The question of revocation requires a review of the language of the TCPA and its implementing regulations. The TCPA itself does not address whether prior express consent, once given, may be revoked. The FCC regulations are also silent on the availability of revocation, although the 1992 regulation containing the "absent instructions to the contrary" language is asserted by Plaintiff as a grant of authority to revoke prior express consent.

Plaintiff provides several out of circuit, district court cases for the proposition that withdrawal of consent to contact after the consummation of a credit contract is permissible under the TCPA; nevertheless, these cases discuss only the methods of revocation (written notice versus sufficiency of oral revocation), and do not address the propriety of revocation itself or when such revocation may be permitted. *See, e.g., Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. 2011); *Adamcik v. Credit Control Services, Inc.*, 2011 WL 6793976 (W.D. Tex. 2011); *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756

(W.D.N.Y. 2010); *Cunningham v. Credit Mgmt., L.P.*, 2010 WL 3791104 (N.D. Tex. 2010); *Moore v. Firstsource Advabtage, LLC*, 2011 WL 4345703 (W.D.N.Y. 2011); *Moltz v. Firstsource Advantage, LLC*, 2011 WL 3360010 (W.D.N.Y. 2011). Every one of these cases, however, is distinguishable from the present matter in that they (1) concerned circumstances requiring the application of the TCPA in conjunction with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and as a result, infused FDCPA mandates into the TCPA, or (2) assume, without support, that a revocation of consent to contact under the TCPA is authorized by the statute and its implementing regulations. In those cases initiated under both the TCPA and FDCPA, where the defendants were "debt collectors" under the FDCPA, the courts' analyses and ultimate determinations have no application here.

The cases cited by Plaintiff and Defendant fall into two broad categories, generally represented by the holdings of *Starkey, supra,* and *Adamcik, supra.* In *Starkey*, the plaintiff provided her cellular telephone number to a cable company in connection with the establishment of an account. Following the cable company's failure to collect a debt from the plaintiff, the cable company turned the file over to a third-party collection agency. After receiving many prerecorded calls from the collection agency, the plaintiff contacted a live operator and orally withdrew consent to be called on that number. The plaintiff sued the debt collector for violations of both the TCPA and the FDCPA. The court analyzed both statutes and found that "debt collection efforts are governed by the FDCPA," thus requiring

any request to cease collection calls under the TCPA to be in writing so as to comport with the withdrawal of consent provisions of the FDCPA.[1] *Starkey*, 2010 WL 2541756, at *6. The *Starkey* court essentially infused the written withdrawal requirement of the FDCPA into the TCPA because the debt collector in that case was subject to both statutes.

In the instant matter, Defendant does not qualify as a "debt collector" under the FDCPA, thus rendering the *Starkey* line irrelevant and inapposite. "The FDCPA's provisions generally apply only to debt collectors." *Federal Trade Commission v. Check Investors, Inc.*, 502 F.3d 159, 172 (3d Cir. 2007)(quoting *Pollice v. Nat. Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the [FDCPA] . . . . Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the [FDCPA] unless they collect under a name other than their own."). "Creditors—as opposed to debt collectors—generally are not subject to the FDCPA." *Id.* (citing *Pollice*, 225 F.3d at 403). "A 'debt collector' is broadly defined as one who attempts to collect debts 'owed or due or asserted to be owed or due to another.'" *Id.* (quoting 15 U.S.C. § 1692a(6)). A "creditor," on the other hand, is one who "offers or extends to offer credit creating a debt or to whom a

---

[1] The FDCPA withdrawal of consent provision reads, in pertinent part: "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . ." 15 U.S.C. § 1692c(c).

debt is owed." *Id.* (quoting 15 U.S.C. § 1692a(4)). One cannot be both a "creditor" and a "debt collector" as defined under the FDCPA because the terms are mutually exclusive. *See Id.* at 173. Defendant extended a line of credit to Plaintiff in order for Plaintiff to purchase products from Defendant's parent corporation, and the debt originated in the transaction between Plaintiff and Defendant; thus, for purposes of the FDCPA, Defendant is not a debt collector, but is a creditor, and the provisions of the FDCPA are inapplicable to its collection efforts.

In the line of cases following the court's reasoning in *Starkey*, various district courts have read the written notice requirement governing the withdrawal of consent to contact under the FDCPA into the TCPA. In fact, these courts have construed the TCPA to include a withdrawal of consent provision that cannot be found in the text of the statute. *See, e.g., Cunningham*, 2010 WL 3791104 (N.D. Tex. 2010)(following *Starkey*, withdrawal of consent to contact under TCPA must be in writing to comport with provisions of FDCPA); *Moore*, 2011 WL 4345703 (W.D.N.Y. 2011)(following *Starkey*, withdrawal of consent to contact under TCPA must be in writing to comport with provisions of FDCPA); and *Moltz*, 2011 WL 3360010 (W.D.N.Y. 2011 (following *Starkey*, FDCPA found to *override* TCPA in debt collection matters, thus requiring written withdrawal of consent to be contacted). Each of those cases, like *Starkey*, is distinguishable from the matter *sub judice* because the litigants assert claims under the FDCPA against "debt collectors" as that term is defined under the FDCPA. Here, Defendant is not a "debt collector," and none of the provisions governing

debt collection under the FDCPA are applicable. Plaintiff is left only with the protections of the TCPA as that individual statute is written.

In *Adamcik*, *supra*, the Western District of Texas criticized the *Starkey* line of cases and held that the TCPA and the FDCPA are two independent statutes whose provisions should not be read into one another. *See Adamcik*, 2011 WL 6793976, at *6 ("Both are duly enacted federal laws, and neither includes any provision subordinating one to the other."). The court further found that because the "TCPA is silent on how consent to receive autodialer calls can be revoked . . . for a host of reasons under the common law and canons of statutory construction . . . oral revocation should be effective." *Id.* at *3. Without thereafter providing any significant explanation, the court found what can only be described as an implicit right to revoke consent, and rejected the need for such revocation to be in writing pursuant to the mandates of the FDCPA. While *Adamcik* repudiated the *Starkey* court's writing of FDCPA requirements into the TCPA, it still found, without any statutory or FCC support, that revocation of consent was possible, and need only be given orally, after such consent was given during the formation of a debt contract.

In *Gutierrez*, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011), the Southern District of California also broke with *Starkey,* and held that oral revocation of consent to contact under the TCPA was sufficient. *Id.* at *3-4. *Gutierrez* did not involve the FDCPA, and the court found that the facts buttressing the *Starkey* decision were factually distinct from those presented in a case involving the TCPA alone. *Id.* at *3. Specifically, the court noted that

"*Starkey* addressed the separate question of whether written notice is required to cease debt collection calls, particularly under the [FDCPA]." *Id.* The *Gutierrez* court, however, still recognized that revocation of consent was still possible after the consummation of a credit contract. *Id.* at *4.

We do not find the statutory construction and reasoning in *Starkey*, *Adamcik*, or *Gutierrez*, to be persuasive, and expressly decline to hold that the TCPA, or any FCC regulation or advisory opinion construing the statute, contains any provision permitting this Court to find post-formation revocation of consent authorized under the provisions of the TCPA. While the *Starkey* line might have applicability if Defendant were subject to the FDCPA, under the prevailing law of the Third Circuit, Defendant is not a "debt collector" as defined by that statute; thus, the right to withdraw consent provisions enacted under the FDCPA do not apply to Defendant, and we do not find any TCPA provision allowing revocation, so that Plaintiff's claims that her rights were violated under the TCPA, assuming all of the facts in her Amended Complaint as true, do not state a cause of action.

Furthermore, although the 1992 *TCPA Order* permits prerecorded calls to mobile telephones if a debtor consents to such calls, the "absent instructions to the contrary" language does not explicitly or implicitly state that a later revocation is permitted. *See* 1992 *TCPA Order,* at 8769. A plain reading of the regulation indicates that such "instructions to the contrary" are to be provided at the time a person "knowingly release[s]" her telephone

number, thereby giving her "invitation or permission to be called" at that number.[2] *See* 1992 *TCPA Order*, at 8769. For instance, if a debtor listed her mobile telephone number on an application for credit, and at the time she submitted the application she instructed the creditor not to call her on that number for debt collection purposes, it is hardly a question that the debtor has issued "instructions to the contrary," so that consent to contact on that mobile number is absent. The FCC's use of the phrase "absent instructions to the contrary" does not provide a basis for this Court to find such instructions as providing a method of revocation.

Finally, "the FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage." *Osorio v. State Farm Bank*, No. 11-61880, 2012 WL 1671780, at *4 (S.D. Fla. May 10, 2012). Under the TCPA, "as clearly stated in the December 28, 2007 FCC Declaratory Ruling, calls regarding debt collection or to recover payment are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *Id.* at *5. The FCC has "unequivocally stated" that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing" and "calls regarding debt collection . . . are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *Meadows v. Franklin Collection Servs., Inc.*, 414 F. App'x 230, 236 (11th Cir. 2011).

---

[2] "We emphasize that under the prohibitions set forth in § 227(b)(1) and [47 C.F.R.] §§ 64.1200(a)-(d) of our rules, only calls placed by automatic telephone dialing systems or using an artificial or prerecorded voice are prohibited. If a call is otherwise subject to the prohibitions of §64.1200, persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 TCPA Order, at 8769.

Accordingly, when viewed through the prism of *Iqbal* and *Twombly*, and taking all allegations set forth in Plaintiff's Amended Complaint as true, Plaintiff fails to state a cognizable cause of action, and a dismissal of her claim is required.

**CONCLUSION**

For the reasons set forth in this memorandum, Defendant's Motion to Dismiss (Doc. 9) will be Granted.

DATE: May 29, 2012

Robert D. Mariani
United States District Judge